I'm sorry I'm standing because I have a back surgery and so it's easier for me to stand so don't let that bother you at all. Thank you. My name is Maggie Heim and I represent the defendant Mr. Carl Litaker in this manner. Mr. Litaker was charged with felony driving on a remote license. He was found guilty after a jury trial in which he presents the necessity defense. He was sentenced to five years in prison. The parties agree on the issues of fine and credit that was in the brief but I won't be touching on that here. In this case the jury had one element to decide and that was did the state disprove necessity beyond a reasonable doubt. Now the problem with the trial's outcome is that the jury was working from an inaccurate definition of necessity. The state argued in appeal that necessity was unavailable so I want to touch on that first. The state didn't cite to any case where an appellate court has reversed in the defendant's appeal the trial court's finding that an affirmative defense was available. This would be a very harsh ruling with very perverse and unfair results. The defendant has tailored his defense based on the trial court's ruling on affirmative defenses. Here Mr. Litaker took the stand and he admitted every element of the offense so that he could argue necessity. It's unfair for the state to now argue that the defense is entirely unavailable yet to use Mr. Litaker's testimony against him. Moreover the trial court didn't use its discretion in allowing the defense. Necessity arises when the defendant faces a choice of evil situation and he's not responsible for creating that situation. A defendant acts out of necessity when he reasonably believes that his conduct will avoid an injury greater than the injury which might reasonably result from his conduct. You need only slight evidence in order to justify getting an affirmative defense and in this case there was evidence of a perceived emergency which Mr. Litaker was acting on when he chose to drive. Everything that happened in this case happened on less than seven miles of US 45 between Flora and Louisville, Illinois. Ms. Tabitha Poulsen testified that she was driving Mr. Litaker home after they had a dinner date in Flora and she began to have a panic attack. The two had only recently begun seeing each other and Mr. Litaker had never seen a panic attack before. He just watched as his date started to let go of the wheel, her eyes were rolling back at her head, she said she gets very disoriented when things are happening. They were able to pull the car over and Mr. Litaker tried to help calm her down but he was unable to. He testified that there was a lot of traffic on the road this night and he himself was beginning to panic. Not knowing what to do, he decided to drive home to his mother's house so that she could drive Ms. Poulsen to the hospital or something. Now, Deputy Childress saw Mr. Litaker driving. He didn't see him driving recklessly and there were no allegations that he was inebriated. He just saw him driving and he knew personally that Mr. Litaker had a revoked license so he stopped them. He did a check, saw that the license was revoked and he took Mr. Litaker into custody. Now, there are some disputed facts and that comes when the deputy is talking to Ms. Poulsen and Mr. Litaker. According to the deputy, he was told that Ms. Poulsen had a stomach ache and that the couple declined any emergency medical care. Now, according to Ms. Poulsen and Mr. Litaker, they were never asked about anything at all until she met him back at the station house and there she told him that she had suffered a panic attack. Now, the trial court properly allowed the defense of necessity. The evidence showed that Mr. Litaker may have been driving due to a perceived emergency situation to get Ms. Poulsen help. There were plenty of credibility questions that were up to the jury to determine. There was conflicting testimony from Deputy Childress, from Ms. Poulsen and from Mr. Litaker and a properly instructed jury should have been the ones to apply the defense. The crucial question for that jury would have been, did Mr. Litaker reasonably believe he was avoiding a greater injury by driving Ms. Poulsen to his mother's for help rather than remaining in literal compliance with the law? Instead, what the jury was told is that necessity is only available if the defendant believed his conduct was avoiding an injury resulting from his own conduct. So, the roadside medical attack was not caused by Mr. Litaker's conduct. So, this given definition wouldn't even apply to Mr. Litaker's defense facts. It entirely omitted the greater injury analysis which is central to the necessity defense. As a result of this, Mr. Litaker could not have received a fair jury trial on the necessity defense. Indeed, Mr. Litaker could not have received effective assistance of counsel in this case because it was defense counsel who first offered this inaccurate instruction. Counsel offered the instruction omitting the greater injury language which is found in the IPI. This is a mistake of law as to the basic definition of his client's only defense to felony charges. Such a mistake is objectively unreasonable. Mr. Litaker was prejudiced by this mistake because the inaccurate instruction impeded the jury's ability to understand the only essential and contested element of the case. Counsel never told the jury that the key question was to compare whether the potential injury avoided was greater than the actual injury incurred. Now, the injury that was incurred here is that Mr. Litaker drove non-recklessly for seven miles or he planned to drive for seven miles down the highway to get help for his passenger. The potential injury he was avoiding was whatever Mr. Litaker reasonably believed could happen to his passenger who was suffering from some sort of attack he'd never seen before. Counsel never argued this greater injury aspect of the defense and he offered an instruction which improperly narrowed the defense by omitting language in the IPI and was confusing for the jury. In sum, Mr. Litaker was convicted by a jury working from an inaccurate definition of necessity and this court should not lose confidence in this conviction. We respectfully ask that this court reverse command for a new trial before a properly instructed jury. There are no questions? Was there any evidence of whose car this was? I believe it was Ms. Paulson's car, but I... And it was noted... I have no further questions. Go ahead, Mr. Litaker. May it please the court. Counsel? My name is Sharon Shanahan and I represent the people of the state of Illinois. I think there's one thing that we need to... I'd like to start out with and that's to point out that we're not dealing with a case of whether the necessity instruction should have been given or should not have been given. We're not even dealing with an issue that was raised at trial, because it wasn't raised at trial. So we're dealing with plain error or ineffective assistance of counsel. And that's why it is appropriate for the state to argue whether the necessity instruction needed to be given at all, because if it didn't need to be given, then there was no prejudice. Prejudice applies to both plain error and ineffective assistance of counsel. So that's why it's absolutely appropriate to consider whether or not the necessity instruction needed to be given. Now, as this court in People v. Haynes and the Supreme Court in People v. Janik have both said, the necessity involves a choice that can only be made between two admitted evils, and here I'm quoting, other options being unavailable. Virtually every other district in the state of Illinois has agreed with that. Other districts have used the word, the phrase sole reasonable alternative. But, and the defendant says, well, Haynes and Janik don't stand for the proposition that this is a sole alternative. But when you say other Supreme Court, other optional courses of action are unavailable, when this course of Haynes says other options being unavailable, then obviously you're dealing with the sole alternative. So we've had virtually about four of the five districts in the state of Illinois plus the Supreme Court that have said, if you have some other option, if it's not just I've got to do this or I've got to do that, that's where necessity comes in. This is not that she pulled in at a turnaround by the water tower. They could have stayed there. That was off the road. It's a turnaround. He could have calmed her down. He could have driven, he disagrees with that. He says that's not where they pulled over. He says they pulled over on Highway 45. But he still could have driven to the first driveway or side road and pulled off there. Now you just allowed him to drive. I beg your pardon? You said he could have driven to the first driveway. I'm saying he had alternatives that would have, his choice was to drive seven miles. I understand. But you would have let him drive to the first driveway. I would have told him to stay where he was at the water tower turnaround. Now he says that's not where they stopped, that they stopped on the side of Highway 45. And what I'm saying is if his girlfriend doesn't even know where she pulled over, because they conflicted with each other in their testimony, but if, if he's right, if this happens on Highway 45 and they pull over on the shoulder, then you might have a necessity to drive off to the, get your car safe. That's what he said he wanted to do. He said he wanted to get his car safe. Safe would be to the first place you can get off the road. You're saying he got, he took the wrong necessity. Well, it wasn't a necessity. That's what he's saying it is. You're saying he took the wrong one. Well, I'm saying it wasn't a necessity at all. He could have going on with other things. He says, it's interesting, he has two different reasons that to me totally conflict with each other about this necessity. One is I've got to get the car safe. I've got to get me safe. That would involve, as I said, if that was his reason, then he should have stayed where he was at at the water tower. If you take his... But I thought he was on the side of the road. That's what she said. She says they were at the water tower turn around. Oh, in the car. They're in a perfectly safe place and they could have just stayed there. That's what he said. He said they were on Highway 45. And so that's what he says. Have to get some, I, I, I drove to get somewhere safe. Somewhere safe would be the first place you could get off the road, not seven miles down the road. But then he also says, oh, I had to get her medical attention or get her to a hospital. He's driving the wrong direction. Flora, which is the, where they left from, where they had just left from, where they're like not even a mile away, is where there's medical attention, is where there's a hospital. He's driving to Louisville, which is barely a broad spot in the road. If he needed medical attention, he could have turned around and got back. Or they both had cell phones. He could have called 911. He could have called his mother. He could have, she could have called her friends. He could have called her friends. But isn't that really for a jury to determine? Isn't that a question of fact considering the circumstances? If they believe that he was on the side of the road and, and one of the options was to get the car safe, now you've got all these other options. Isn't that what the instruction talks about? Is whether, which entry is better? The instruction says there are two options. Doing something illegal or doing something that, in this case, her driver basically, in its sentence form, it says him driving or her driving. Two things. What does Supreme Court, what this court, and, and Haines, what all the other court cases say? This only happens when there are only two options. Let's take the very simplest one. Pick up your phone and call 911. That's a third option. But that's what I'm saying. You're talking about options. I'm, and as soon as I get past two, then the necessity instruction doesn't need to be given. Okay, that's your argument. It doesn't need to be given because? Because as Haines and, and Janik said, necessity involves a choice that can only be made between two admitted evils. Other options being unavailable. So if there are other options available, then there is no necessity. Necessity says guy with a DUI being driven by wife who goes into labor. He's got to get into the hospital. Can't delay, can't do anything. And he's, maybe that, you know, that would be, and there's no other option. That's not what happened here. And so there are other options. And as I said, necessity involves two choices. Both of them, the court, the, they call them in. Sure. But this court can affirm on any basis. And as I say, this is a plain error and or ineffective assistance counseling plan. It doesn't matter whether the court was right or wrong in what it did. If the defendant wasn't prejudiced by what happened and if the defendant didn't, wasn't even entitled to the instruction, then it doesn't matter whether it was given or not. And so the other thing I want to talk about is that as a general rule, a judgment isn't reversed when jury instructions are faulty unless they mislead the jury and the party suffers prejudice. Now, don't have time to go into this right now, but I think it's pretty clearly laid out in our brief that the police officer was very clear, very concise, established exactly what happened here. Defendant and Ms. Polson's testimony was improbable. I mean, they asked us to believe that in the midst of this shaky, disoriented, hysterical, hyperventilating woman that the police officer drives off and leaves her and lets her drive behind him. That's pretty improbable. And also, as I mentioned earlier, their testimony even conflicts with each other. So if the defendant chooses to present an improbable story, then the jury's entitled to reject it. One question, Ms. Shanahan. You do believe that the minimus needs to be changed to reflect the proper fines? Yes, Your Honor. Okay, thank you. So first, this idea that if there are more than two alternatives, suddenly necessity as a matter of law isn't allowed, I don't think that's supported by Haynes or by Janik. In Janik, necessity wasn't allowed because there were no alternatives at all. The defendant was arguing against men's write-outs, so that's just, you know, the language wasn't being used in that case. In Haynes, this Court recognized that there was no evidence of hot pursuit at the moment the defendant engaged in the conduct which he later argued was necessary. And if you look through all of the cases cited by the State, and I do this in a reply brief, in all of those cases there was a lack of imminence. There was some sort of long-term ongoing harm. So I think the best way to understand those cases is when you don't have imminent harm, a judge might be able to say there is no reasonable belief here. But when there is slight evidence of imminent harm, then I think it becomes a jury question. And I think this Court has held that before, I think, for a self-defense. It's not the province of the judge to weigh the evidence and decide if a subjective belief was reasonable or unreasonable. That's the jury's duty. And necessity, as defined by the legislature, is a reasonable belief standard. So there's no jury determination of reasonable if a court decides that every time there's more than two options. Another thing is that we know now that panic attacks pass. And the State relies on this a lot in their brief, that they could have just waited. He could have called and waited for help. He could have driven back to the hospital. But the question is, what was Mr. Lineker's belief in that moment? It's important that this was a quickly unfolding emergency. He was panicking himself, the traffic being around. He was in a high-pressure situation trying to make the best decision. And I think that's enough evidence that a jury, who's properly given the definition of necessity, makes the call on whether that was a reasonable belief or an unreasonable belief. So the overwhelming evidence of guilt, where the State is pointing to the officer's credible testimony and the apparent conflicts between the defendant's testimony, I don't think there's as much conflict there. But regardless, I think a fact finder seeing live testimony should be the one to apply the real definition of necessity, not a court, not below and not at the appellate level. And then as to this jury instruction not prejudicing the defense, I think it's very important to recognize that the jury instruction told the jury specifically necessity is only available if the defendant believed his conduct avoided injury resulting from his conduct. It doesn't even cover the roadside attack. And if the jury was following that instruction to the letter, as it was instructed to do under IPI 101, it would have found no necessity. It would have been forced to. And we can't be sure what the jury was thinking when they applied this inaccurate instruction. It's because of that that we There are no questions? Thank you, guys. Court will recess now until 1.30. Thank you.